JUDGE RAMOS



# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Elizabeth Grant <br><br>                      Plaintiff, <br><br> v. <br><br> The American Society for the Prevention of Cruelty to Animals (ASPCA), and <br><br> The City of New York and The New York City Police Department (NYPD), John & Jane Does (1-10)[1], and <br><br> The County of Queens; Richard A. Brown, District Attorney of the County of Queens, individually and in his official capacity; Assistant District Attorney Nicoletta Caferri, individually and in her official capacity; John and Jane Does (11-20)[2] ,individually and in their official capacities. <br><br>                      Defendants. | Case No. <br><br><br><br> **COMPLAINT** <br><br> **[JURY DEMAND]** |

RECEIVED

APR 13 2016

U.S.D.C. S.D. N.Y.
CASHIERS

---

[1] Names being fictitious and presently unknown to plaintiff and being intended to be Police Officers, supervisory personnel and/or other employees of the Defendant City of New York and/or New York City Police Department

[2] Names being fictitious and presently unknown to plaintiff and being intended to be Assistant District Attorneys, supervisory personnel and/or other employees of the Defendant City of New York City, County of Queens and/or The District Attorney of the City of New York

      COMES NOW Elizabeth Grant, by and through her attorneys of record, Richard Bruce

Rosenthal and Thompson Gould Page, and complain of defendants as follows:

## PRELIMINARY STATEMENT

1.  It has been said that, "[i]ndividual freedom finds tangible expression in property

    rights."[1] The Defendants, individually and working in concert, have disregarded

---

[1] *United States* v. *James Daniel Good Real Property,* 510 U.S. 43, 61 (1993).

this venerable principle by seizing, keeping, and on occasion killing the private property of others (in this case dogs, cats and turtles) without providing the constitutionally required hearings. This they cannot do.

2. This is an action seeking declaratory and injunctive relief and damages, costs and attorneys' fees, arising under 42 U.S.C §1983, §1985 and §1988, to redress deprivation, under color of law, of rights, privileges and immunities guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution. It is brought by the owner of a number of animals that were seized and retained by the defendants, which include the ASPCA acting in concert with the City of New York and the County of Queens, the District Attorney of the County of Queens and several of their agents and representatives, without any sort of due process or hearing provided to the plaintiff to challenge the validity of such seizure and retention.

3. Moreover, from January 28, 2016 (the date of the seizure) and continuing to date, the plaintiff herein has not been charged with any crime prior to, during, or after the subject seizures. By reason of defendants' actions, including their unreasonable and unlawful conduct and their policy and practice of seizing animals without any recovery procedure in place, the plaintiff was deprived of her constitutional rights.

4. Pursuant to the 2nd Circuit decision in *Krimstock v. Kelly*, 464 F.3d 246 (Krimstock III) and Judge Baer's subsequent decision (*Krimstock v. Kelly*, 506 F.Supp.2d 249) owners of property, obstensibly held as evidence, must make a demand for the return thereof, or, in the alternative demand a hearing to determine whether there was probable cause to seize and for the necessity for continued retention of the property.

5.  As a result of, and in retaliation for, plaintiff submitting such a letter to the Queen's County District Attorney's office, the Commanding Officer of the NYPD Property Division, the Property Officer of the NYPD 115th precinct, along with the office of the Senior Vice President and Chief Legal Officer of the ASPCA, Ms. Beverly Jones,  which letter demanded, at the least, a *Krimstock* compliant post-seizure hearing, or in the alternative, immediate return of the subject animal property, the defendants, without complying with the requirements of Due Process, *Krimstock* or any other binding precedent, instead have now made known their intent to arrest the plaintiff by surrender or apprehension in the coming week in order to chill plaintiff's free exercise of her First Amendment right to petition the government for redress of grievances. The subject correspondence is annexed hereto as **Exhibit "A".** As a result of such retaliation, which occurred after two and one half months from the date of seizure and the NYPD's knowledge of the alleged facts giving cause to the subject arrest, and most notably mere days from the receipt of plaintiff's letters demanding the return of her property, upon information and belief plaintiff Grant will be arrested by the NYPD. This will likely result in her being fired and semi-permanently or permanently barred from seeking employment in her capacity as a teacher.

6.  Plaintiff seeks, therefore: a declaratory judgment that plaintiff Grant's rights were violated by Defendants' retaliation for plaintiff exercising her First Amendment right under the Petition Clause; a declaratory judgment declaring the City of New York's and the County of Queens' and the Queen's County District Attorney's policy and practice of seizing animals while not providing any sort of hearing to determine the validity of

the seizure and continued retention, or providing any means of recovering such property whatsoever, to be unconstitutional and unlawful, and in violation of the clear mandate set down by the Court in the various Krimstock decisions, and; a preliminary and permanent injunction enjoining defendants from seizing animals without provision for probable cause/validity hearings or recovery procedures in the future. Plaintiffs also seek an award of compensatory and punitive damages and attorney's fees.

## JURISDICTION AND VENUE

7. This Court has jurisdiction as Plaintiffs' claims are based upon 42 U.S.C. § 1983 and § 1985 which authorize actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiffs by the Constitution of the United States.

8. This Court has jurisdiction pursuant to § 1331 of the Judicial Code (28 U.S.C.A § 1331) as this is a civil action arising under the Constitution of the United States.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks to remedy deprivations, under color of law, of Plaintiffs' rights guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States & applicable federal laws.

10. Plaintiffs' claims for declaratory relief and compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202.

11. Plaintiffs' claims for attorney's fees and costs are predicated upon 42 U.S.C. § 1988 which authorizes the award of attorney's fees and costs to prevailing parties pursuant to 42 U.S.C § 1983.

12. Venue is conferred by 28 U.S.C § 1391(b), as the main offices of Defendants AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS (hereinafter, "ASPCA"), THE

4

CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT (hereinafter, "NYPD"), defendants JOHN AND JANE DOES 1-10, THE COUNTY OF QUEENS, DISTRICT ATTORNEY RICHARD A. BROWN, ASSISTANT DISTRICT ATTORNEY NICOLETTA CAFERRI,  AND JANE AND JOHN DOES 11-20 are all located in the Southern District of New York; the animals that are the underlying subject of this lawsuit, upon information and belief, are being held in the Southern District of New York, and; the events giving rise to these claims occurred in the Southern and Eastern Districts of New York.

## **PARTIES**

13. Plaintiff, ELIZABETH GRANT, is an individual residing at 25-44 82nd Street, Jackson Heights, New York.

14. Upon information and belief, at all times described herein defendant ASPCA is a domestic non-profit organization organized and operating under New York State law with a principal place of business situated at 424 East 92nd Street, New York, New York.

15. Upon information and belief, defendant THE CITY OF NEW YORK, (hereinafter, "the City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and other agencies, which act as their agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and its other agencies and departments, and the employment of police officers and employees of its other agencies and departments, as said risks attach to the public consumers of the services provided by the NYPD and other agencies and departments of the City.

16. Upon information and belief, defendant NYPD is an entity created and authorized under the laws of the State of New York and a department and subdivision of the defendant City of New York. It is authorized and empowered to enforce the laws of the State of and City of New York, and acts as their agent therefore in the area of law enforcement. As the law enforcement arm of the City, the NYPD has the power to carry out, through its departmental policies, the laws and official policies of the City of New York.

17. Defendants JOHN AND JANE DOES 1-10, inclusive, are the individual police officers, supervisors, members and/or employees of the NYPD, as yet unidentified, who have or will in the future seize, retain, hold, restrain or destroy animal property without providing a property vouchering system or other necessary means to effect a prompt, post-seizure hearing of animal property.

18. Upon information and belief, the defendant COUNTY OF QUEENS (hereinafter "the County") is a municipal corporation organized and operating under New York State law, as a subdivision of the City of New York, with a principle place of business situated at 120-55 Queens Boulevard, Queens, New York.

19. Upon information and belief, at all times described herein the defendant, RICHARD A. BROWN, Esq. (hereinafter "Brown") was, and remains, an elected official of and an employee, agent and representative of the defendant County of Queens and/or the defendant City of New York, in his capacity as the Queens County District Attorney.

20. Upon information and belief, at all times described herein the defendant, Assistant District Attorney Nicoletta Caferri (hereinafter "Caferri") was, and remains, an employee, agent and representative of the County of Queens and The City of New York,

and RICHARD A. BROWN, District Attorney for the County of Queens, in her capacity as a supervisory Assistant District Attorney in the Queens County District Attorney's Office.

21. Defendants JOHN AND JANE DOES 11-20, inclusive, are the individual assistant district attorneys, supervisors, members and/or employees of the County of Queens District Attorney's Office, as yet unidentified, who have or will in the future cause to be seized, retained, held or destroyed, animal property, without providing or participating in a post-seizure hearing process, and who may use targeted prosecution to chill the exercise of the 1st Amendment Right of Petition in the future.

## **PRELIMINARY FACTS**

22. Under the Rules of the City of New York, (hereinafter, "Rules") to which the County of Queens is bound by virtue of its identity as one of the Five Boroughs of New York City, the County operates through its Borough President, Borough Board and its elected representatives to the New York City Council.

23. At all relevant times described herein, the City of New York and County of Queens maintained an animal seizure program, within which they: (a) seize and retain possession of animals incident to allegations of animal cruelty, and (b) thereafter subject such animals to prolonged, unjustified retention, civil forfeiture and death.

24. Under such program, as carried out by the defendants, upon the alleged violation of New York Agriculture and Markets Law Article 26 §373(2) by an individual, the defendants cause the seizure of any and all animals on the premises of the accused and immediately deprive such owner of the possession, use and enjoyment of these animals.

7

25. The 14th Amendment to the United States Constitution explicitly provides that no person may be deprived of life, liberty or property without due process of law.

26. Under the constraints of the 14th Amendment, the defendants are statutorily required to afford animal property owners with due process before effectuating a continued deprivation of their property rights.

27. In the matter of *Krimstock v. Kelly,* 2000 WL 1702035, the U.S. District Court, Southern District of New York, entertained a challenge to the constitutionality of the City of New York's seizure and continued retention of property, in that case motor vehicles, from owners who had not been convicted of any crime.

28. In 2002, on appeal from the Southern District, the Court of Appeals for the Second Circuit, per now-Supreme Court Justice Sotomayor, explicitly ruled that to comport with the constraints of the Due Process Clause of the 14th Amendment, a municipality which seizes and seeks to retain possession of an accused's property must provide the owner of such property with a prompt "retention hearing" at which the owner may challenge the validity of both the initial seizure of the property and the continued retention thereof. *Krimstock v. Kelly.* 306 F.3d 40 (2nd Cir. 2002).

29. In rendering such a ruling, the Second Circuit explicitly set the standard that, to establish entitlement to retain possession of seized property, a municipality *must establish* (a) the validity and probable cause for the underlying arrest and seizure; and (b) the necessity and legitimacy of continued retention of the property.

30. Thereafter, in the follow-up decisions in Krimstock v. Kelly, 464 F.3d 246 (Krimstock III) and Judge Baer's subsequent decision (Krimstock v. Kelly, 506 F.Supp.2d 249), the Court

8

concluded that the right to such hearing applied to property so seized and purportedly

held as evidence, and set down further procedures for obtaining such a hearing.

31. Separate and apart from the 14th Amendment, under the Rules of The City of New York,

to which Queens County is bound as well, the City codified the *Krimstock II*

requirements, but only as they apply to the seizure of vehicles, in Title 48, Chapter 2,

Subdivision D. In sum, this section of the Rules requires the municipality to determine

whether probable cause exists for the seizure of vehicles, whether the municipality is

likely to succeed on the merits of a subsequent forfeiture action, whether retention is

necessary to preserve the vehicle from destruction or sale during the pendency of a

forfeiture proceeding, and whether any other, less restrictive measures could

adequately protect the City's interest during the proceeding.

32. However, no such procedural due process or protection is specifically afforded to

owners of animal property taken under NY Agriculture & Markets Law Article 26 §373(2)

33. In direct defiance of both the 14th Amendment Due Process requirements articulated

in *Krimstock* and those requirements afforded to certain other property owners by the

Rules of the City of New York, namely vehicle owners, the defendants herein

deliberately permit the abridgement of the property rights of animal property owners

by such defendants' agents or employees, and systematically refuse to comport with

the requirements of due process.

### SEIZURE OF PLAINTIFF'S PROPERTY WITHOUT DUE PROCESS

34. On or about January 28, 2016, the defendant City and County, acting through their

agents the NYPD, and joined by a contingent of ASPCA agents and/or employees,

9

forcibly entered the plaintiff's home and seized the plaintiff's property, consisting of a large number of domestic pets, during a raid colored under the execution of a search warrant.

35. Neither at the time the NYPD and ASPCA seized the animals, nor at anytime thereafter, have any charges been brought against the owner of the animals for violating any law or regulation that justifies such seizure, nor has any notice been served that the NYPD or ASPCA had lawfully taken possession of these animals.

36. Additionally, since that time, the defendants have made no effort to advise the plaintiff of any sort of hearing or possible means of challenging the validity of such seizure.

37. The Rules of the City of New York (hereinafter, "The Rules"), Title 38, Chapter 12, Subchapters A and B, define several procedures for effectuating the return of property held by the NYPD.

38. The Rules provide procedures for when the NYPD may be holding the property of a citizen/suspect and how to reclaim it, including procedures applicable to the facts of this case; to wit, the property may be Arrest Evidence, in which case Subchapter B, §§12-31 through 12-38 govern the return of the property; it may be property held for "Safekeeping" where its return is governed by Rule 38, Subchapter A, §12-08; or the property may be considered "Investigatory Evidence," where its return is governed by Rules 38, Subchapter A, §12-06.

39. The City, County, ASPCA and other defendants cannot claim to be holding the property as "Arrest Evidence," because as of the date of this complaint, no arrest has been made concerning the actions which also gave rise to the seizure of plaintiff's property.

40. In the event the defendants claim to be holding the property under the auspices of "Safekeeping", its return would be governed by Rule 38, Subchapter A, §12-08. This section states that "this category (of property) covers property cases removed from aided and prisoner's personal property not required as evidence. The claimant generally produces the pink copy of the voucher or, if not issued, obtains the voucher number from the Precinct in which the property was taken." *Rules of the City of New York, Title 38, Subchapter A, §12-08.* However, the plaintiff in this case was not issued a voucher of any sort at the time of the seizure. Telephone communications with both the Queens County Property Clerk and Officer Chen, Property Officer of the 115th precinct of the NYPD (the precinct that executed the subject warrant and seizure) confirm that neither office has available a voucher number for the plaintiff's animal property nor were any of the animals so seized vouchered or otherwise documented by the NYPD. Thus, the claimant not only was not given a voucher number (as none of the property so seized was ever vouchered by the NYPD) in order that she might identify and claim her property, but direct contact with the entities from whom she might request such information confirm it was not recorded and cannot be provided.

41. Finally, the property could be being held as "Investigatory Evidence," and thus its return would be governed by Rule 38, Subchapter A, §12-06, which states that "[p]roperty vouchered for investigation will require the claimant to obtain a release from the investigating officer, in writing, usually on department letterhead." As previously noted, the defendants never vouchered the subject property, and therefore have made no claim to justify the continued retention of the plaintiff's property (animals) pursuant to

the New York City Rules. Even if the City, County or ASPCA defendants claim they are justified in continuing to hold the plaintiff's property, the animals are not being held by NYPD Officer Lorraine Vultaggio, on whose affidavit the Search Warrant was based, nor are they being held by her department at large, and thus neither she nor the NYPD can control the retention or release of the property. Additionally, this scenario leaves the sole determination of the validity of the continued abridgement of the plaintiff's property rights in the hands of the City and/or its agents, all of whom are partial and adversarial to the plaintiff, and cannot be allowed to be the sole determinant of whether their sole determination was proper. This does not constitute a meaningful opportunity at a meaningful time to have the plaintiff's voice heard before a neutral and unbiased tribunal.

42. Thus, the Rules simply do not provide this plaintiff an avenue for *any* review of the validity of the City, County and/or ASPCA's continued retention of her property, let alone review sufficient to satisfy the requirements of Constitutional Due Process.

### Governmental Policies - Monell Liability

43. At all times relevant hereto, it was the policy of the City of New York and/or County of Queens that in any seizure and subsequent retention of animal property, the person from whom such property was seized had *absolutely no right of hearing or review of the validity of such seizure or continued retention.*

44. At all times relevant hereto, it was the policy of The City of New York, acting through the County of Queens, acting through District Attorney Brown and the NYPD, and finally acting through the ASPCA, to retain possession of any animal property seized pursuant

to an alleged violation of New York Agriculture and Market Law §373 without providing any sort of hearing to the owner of such property wherein they may challenge the validity of such seizure and retention. Further, it is their policy to retain possession until such time as the holding agency, in this case the ASPCA, disposes of the property through adoption or destruction, at the sole discretion of the holding agency. At no time during this period is the owner of such animals permitted to see the animals, verify their condition or safety, or challenge the validity of their continued retention.

45. At all times relevant hereto, it was the policy of the defendants City of New York and County of Queens to deliberately train or permit to be trained the Queens County District Attorney, his agents and employees to retain such property without prevailing at a hearing proving that retention of the animal property is necessary to prevent its removal or destruction absent less restrictive means; to permit and cause the NYPD to seize animal property without providing vouchering or other identificatory means of ascertaining seized property; and to permit and cause the ASPCA to effect continued retention and destruction of private animal property without notice to the rightful owner or their having a meaningful opportunity to be heard.

**DECLARATORY JUDGMENT**

46. Plaintiff has an actual and substantial controversy with Defendants, and unless there is a declaration of the rights of Plaintiff, declaring that Plaintiff is entitled to a hearing to determine the validity of the seizure and continued retention of her property, pursuant to and compliant with the holding of Krimstock v. Kelly, 506 F. Supp. 2d 249 (S.D.N.Y. 2007) (Krimstock III); and (B) Plaintiffs have a right to a prompt post- seizure, pre-judgment

13

hearing before a neutral judicial or administrative officer to determine whether the Defendants (i) had probable cause to believe the plaintiff committed an act of animal cruelty in violation of Agriculture and Markets Law (c); (ii) had probable cause to obtain the warrant which permitted the entry upon Plaintiff's property and warrant seizure of her animals under the Fourth Amendment of the United States Constitution; (iii) properly determined whether means short of retention of the animals could have satisfied the Defendants' need to preserve the animals during the pendency of any subsequent proceedings, the unconstitutional policies and practices will continue.

47. In *Gerstein v. Pugh*, prisoners brought a class action challenging a Florida law which allowed prosecutors to determine probable cause for detention without a hearing. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

48. The Supreme Court determined in *Gerstein* "that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention ...." (*Id.* at 126), & that "the detached judgment of a neutral magistrate is essential ...." *Id.* at 114.

49. *Gerstein*, when read in conjunction with *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, has been applied to the seizure and retention of property by the U.S. Court of Appeals, Second Circuit in *Krimstock v. Kelly*, 306 F.3d 40 (2002), and similarly adopted by virtually every other Circuit Court.

50. In applying the facts and ruling in *Gerstein,* when read in conjunction with *Mathews* as applied to property in *Krimstock*, to the case at bar, Plaintiffs contend that a hearing was required to determine whether there was probable cause for the extended detention of Plaintiffs' dogs, which violated the Plaintiffs' property and constitutional due process rights, and failure to provide this hearing within a reasonable time violated the Fourth

and Fourteenth Amendments of the United States Constitution.

51. For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' *Baldwin v. Hale,* 1 Wall. 223, 233, 17 L.Ed. 531. See *Windsor v. McVeigh*, 93 U.S. 274, 23 L.Ed. 914; *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215; *Grannis v. Oredean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363.

52. It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62.

53. If the right to notice and a hearing is to serve its full purpose, then it is clear it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation, but no later hearing and no damage award can undo the fact the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.' *Stanley v. Illinois*, 405 U.S. 645, 647, 92 S.Ct 1208, 1210, 31 L.Ed.2d 551.

54. In applying the facts and ruling in *Gerstein,* when read in conjunction with *Matthews* as applied to property in *Krimstock,* to the case at bar, Plaintiffs contend that a hearing was required to determine whether there was probable cause for the extended detention of Plaintiff's animals, which violated the Plaintiffs' property and constitutional due process rights, and failure to provide this hearing within a reasonable time violated the Fourth and

Fourteenth Amendments of the United States Constitution.

55. As a result, Plaintiffs suffered, and will continue to suffer into the future, harm. They will continue to be deprived of their constitutional rights indefinitely without due process.

### CLAIM FOR RELIEF

#### COUNT ONE

#### Due Process Claims Under The Fourteenth Amendment Of The U.S. Constitution

56. The plaintiff repeats & reiterates the allegations set forth in paragraphs "1" through "55" herein above, with the same force and effect as if fully set forth at length herein.

57. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and custom pursuant to which owners of animals can have their animal property seized and held indefinitely or killed by defendants based on a unproven allegations in the absence of evidence and without a hearing, defendants have deprived and will continue to deprive each and every plaintiff and members of the plaintiff class of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

58. All defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth amendments to the United States Constitution.

Defendants have conspired among themselves to do so (taking numerous overt steps in

furtherance thereof), and failed to prevent one another from doing so.

59. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional

rights.

### COUNT TWO

### Due Process Claims Under the Fourth Amendment Of The U.S. Constitution

60. The plaintiff repeats & reiterates the allegations set forth in paragraphs "1" through

"59" herein above, with the same force and effect as if fully set forth at length herein.

61. By implementing, promulgating, and continuing to enforce and/or effectuate a policy,

practice and custom pursuant to which owners of animals can have their animal

property seized and held indefinitely or killed by defendants based on a unproven

allegations in the absence of evidence and without any finding of good cause by an

unbiased and neutral judicial or administrative officer, defendants have deprived and

will continue to deprive each and every plaintiff and members of the plaintiff class of

rights, remedies, privileges and immunities guaranteed to every citizen of the United

States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and

Fourteenth Amendments of the United States Constitution.

All defendants have acted under pretense and color of state law and in their individual

and official capacities and within the scope of their employment. Said acts by said

defendants were beyond the scope of their jurisdiction, without authority of law, and

in abuse of their powers, and said defendants acted willfully, knowingly, and with the

specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. §

17

1983, and by the Fourth and Fourteenth amendments to the United States Constitution.

Defendants have conspired among themselves to do so (taking numerous overt steps in

furtherance thereof), and failed to prevent one another from doing so.

62. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' constitutional

rights.

### COUNT THREE
### Chilling of the Right of Petition Claim Under the First Amendment Of The U.S. Constitution

63. The plaintiff repeats & reiterates the allegations set forth in paragraphs "1" through

"62" herein above, with the same force and effect as if fully set forth at length herein.

64. At all times described herein, the plaintiff was vested of constitutionally protected rights

of free speech, in this case the right to petition for the redress of grievances, as set forth

herein above.

65. Plaintiffs allege that New York Agriculture and Markets Law §376 as applied by the City

of New York, County of Queens through the NYPD is in violation of the rights of the

plaintiff and others to free speech and the right to petition for the redress of grievances

as guaranteed by the First Amendment to the United States Constitution because such

statute is being applied and enforced to punish the exercise by the plaintiffs of their

constitutionally protected right of free speech and the right to petition for the redress

of grievances.

66. As a result of the aforesaid defendants' violation of plaintiff's Substantive Due Process

rights, the plaintiff has been damaged through the defendant's actions to deliberately

chill her exercise of her First Amendment rights. By continuing a policy, practice and

procedure of deliberately initiating prosecution only after the plaintiff has challenged

18

their as-yet unbridled authority to seize and withhold animal property, the actions of the Queens District Attorney's office should serve to shock the judicial conscience.

67. All of the injuries described herein above were actually and proximately caused by the concerted acts of the defendants described herein.

68. The aforesaid defendants' violation of plaintiff's due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

69. Having deliberately violated the plaintiff's Constitutionally protected rights, and concomitantly having caused the plaintiff to sustain monetary and emotional damages as a result thereof, each of the defendants are personally liable to the plaintiff, and the plaintiff is entitled to secure relief against the defendants, pursuant to 42 U.S.C. §1983.

70. The actions of the defendants were performed with actual spite, malice, and an affirmative intent to injure the plaintiff, and were calculated efforts which the defendants undertook with actual knowledge that their actions were in actual and deliberate violation of the plaintiff's U.S. Constitutional rights.

71. In view of the foregoing, a substantial award of punitive damages against each of the individually named defendants is warranted.

## JURY DEMAND

72. Plaintiffs hereby demand trial by jury of all issues properly triable thereby.

**PRAYER FOR RELIEF**

**WHEREFORE,** the plaintiff requests that the Court render judgment:

*COUNT ONE*

(a) Grant Plaintiff compensatory damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C 1983; and

(b) Grant Plaintiffs punitive damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C 1983;

(c) Grant Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

(d) Grant Plaintiffs any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. § 1988(c); and

(e) For such other and further relief as this court may deem just and proper.

*COUNT TWO*

(a) Grant Plaintiff compensatory damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C 1983; and

(b) Grant Plaintiffs punitive damages against each of the individually named defendants in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C 1983;

(c) Grant Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

(d) Grant Plaintiffs any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. § 1988(c); and

(e) For such other and further relief as this court may deem just and proper.

### *COUNT THREE*

(a) Grant Plaintiff compensatory damages against each of the individually named defendants

in an amount to be determined by a jury as to the claims pursuant to 42 U.S.C 1983; and

(b) Grant Plaintiffs punitive damages against each of the individually named defendants in an

amount to be determined by a jury as to the claims pursuant to 42 U.S.C 1983;

(c) Grant Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

(d) Grant Plaintiffs any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §

1988(c); and

(e) For such other and further relief as this court may deem just and proper.

_____

Richard Bruce Rosenthal
Federal Bar No. rb1834

Richard Bruce Rosenthal, Esq.
120-82 Queens Boulevard
Kew Gardens, NY 11415-1204
Tel:      (718) 261-0200
Cell:     (516) 319-0816
Fax:      (718) 793-2791
richard@thedoglawyer.com

Thompson Gould Page, Esq.
pro hac vice application to be submitted

Thompson Gould Page, LLC
1 Linden Place, Suite 108
Hartford, CT 06106–1748
Tel:      (860) 895-6644
Cell:     (860) 983-7655
Fax:      (860) 896-6672
thom@tpagelaw.com

Attorneys for Plaintiffs

21